IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

THOMAS KELSEY,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

     Appellant,

v.

CASE NO. 1D14-518

STATE OF FLORIDA,

     Appellee.

_____/

Opinion filed November 9, 2015.

An appeal from the Circuit Court for Duval County.
James H. Daniel, Judge.

Nancy A. Daniels, Public Defender, and Glen P. Gifford, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Virginia Chester Harris, Assistant Attorney General, Tallahassee, for Appellee.

ON MOTION FOR REHEARING

PER CURIAM.

On March 26, 2010, Thomas Kelsey was sentenced to two life sentences and two concurrent twenty five year terms for the four nonhomicide offenses he committed in 2002 at the age of fifteen: armed burglary with an assault or battery, armed robbery, and two counts of sexual battery. A few months later, the Supreme

Court announced its decision in <u>Graham v. Florida</u>, 560 U.S. 48 (2010), pursuant to which Kelsey was resentenced to concurrent forty-five year sentences for each offense. The issue presented is whether he is entitled to be resentenced again under <u>Graham</u> and its progeny including recent juvenile sentencing legislation and decisions of our supreme court. We initially answered that question in the negative, but Kelsey has asked that we reconsider our legal analysis, which we have done, concluding that he is not entitled to resentencing again.

While this appeal was pending, the Florida Supreme Court decided <u>Henry v. State</u>, 40 Fla. L. Weekly S147 (Fla. Mar. 19, 2015),[1] holding that "the constitutional prohibition against cruel and unusual punishment under <u>Graham</u> is implicated when a juvenile nonhomicide offender's sentence does not afford any 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.'" <u>Id.</u> (citing <u>Graham</u>, 560 U.S. at 75). The court stated that "<u>Graham</u> requires a juvenile nonhomicide offender . . . to be afforded such an opportunity during his or her natural life." <u>Id.</u> Because Henry had been resentenced after <u>Graham</u> to ninety years, requiring that he be imprisoned "until he is at least ninety-five years old," our supreme court concluded his aggregate sentence—which did not afford him the "meaningful opportunity" for release that <u>Graham</u> requires during an offender's "natural life"—was unconstitutional and that he "should be

_____

[1] <u>Henry</u> was released after the filing of the initial and answer briefs, but before the time for filing of the reply brief, in this case.

resentenced in light of the new juvenile sentencing legislation enacted by the Florida Legislature in 2014, ch. 2014-220, Laws of Fla." Id.; cf. Thomas v. State, 78 So. 3d 644 (Fla. 1st DCA 2011) (concurrent fifty-year terms without possibility of parole is not the functional equivalent of a life sentence). Though Henry's crimes occurred prior to the effective date of the legislation, its remedial aspects were judicially extended to him. See Horsley v. State, 160 So. 3d 393 (Fla. 2015).

Kelsey requests the same relief afforded to Henry, but we may do so only if his forty-five year prison term is a *de facto* life sentence in violation of Graham, which it is not under our Court's precedents. See Abrakata v. State, 168 So. 3d 251, 252 (Fla. 1st DCA 2015) ("absent a violation of *Graham,* there is no legal basis to retroactively apply section 921.1402 (or any other provision of the juvenile sentencing legislation enacted in 2014) to the 2011 offense in this case."); Lambert v. State, 170 So. 3d 74, 76 (Fla. 1st DCA 2015) ("Here, unlike the sentences in *Henry* (90 years) and *Gridine* (70 years), the 15–year sentence Lambert received on count 2 does not amount to anything close to a *de facto* life sentence."). Because the concurrent resentences at issue in this case do not violate Graham, we are constrained to deny relief.

We note that our supreme court recently quashed this Court's decision in Thomas v. State, 135 So. 3d 590 (Fla. 1st DCA 2014), review granted, decision quashed, 40 Fla. L. Weekly S479f (Fla. Sept. 4, 2015), a case involving a homicide

3

offense. Thomas was convicted of armed robbery and first-degree murder and sentenced to mandatory life term without parole, but was resentenced in light of Miller v. Alabama, 132 S. Ct. 2455 (2012) to concurrent thirty- and forty-year sentences. This Court upheld those resentences, but the supreme court "remanded for resentencing in conformity with the framework established in chapter 2014–220, Laws of Florida, which has been codified in sections 775.082, 921.1401, and 921.1402 of the Florida Statutes. *See Horsley v. State,* 160 So. 3d 393, 395 (Fla. 2015)." Thomas, 40 Fla. L. Weekly S479f. In effect, the supreme court appears to require that any juvenile initially sentenced to mandatory life without parole for a homicide in violation of Miller be sentenced under the new framework regardless of what resentence may have been imposed in the interim.

But this is a Graham case, not a Miller case; Kelsey's crimes were nonhomicides for which a range of lawful punishments was available. As to Graham defendants, the supreme court has required re-resentencing only where the initial resentence is life or de facto life, as in Henry (ninety years) and Gridine v. State, 40 Fla. L. Weekly S149 (Fla. Mar. 19, 2015) (seventy years). For example, in Henry because the supreme court "determined that Henry's sentence *is unconstitutional under Graham,* we conclude that Henry should be resentenced in light of the new juvenile sentencing legislation enacted by the Florida Legislature in 2014, ch.2014–220, Laws of Fla." 40 Fla. L. Weekly S147 (citing Horsley)

4

(emphasis added). Unlike <u>Miller</u> cases for which *no* valid remedy on resentencing was available until the recent legislation, a wide range of valid term of years sentences are available for juvenile's whose original sentences were unconstitutional under <u>Graham</u>. If those resentences themselves violate <u>Graham</u> by providing no meaningful opportunity for release (as in <u>Henry</u> and <u>Gridine</u>), the supreme court requires resort to the 2014 legislative remedies. But the supreme court has not yet held that all resentencings and re-resentencings under <u>Graham</u> must also comply with the recent legislation. Our precedents have not held that a forty-five year sentence for a nonhomicide is a *de facto* life term to which <u>Graham</u> applies; nor has our supreme court. We are thereby constrained to affirm in this case, but recognizing the need for clarity on this category of <u>Graham</u> cases certify the following question as one of great public importance:

> Whether a defendant whose initial sentence for a nonhomicide crime violates <u>Graham v. Florida</u>, and who is resentenced to concurrent forty-five year terms, is entitled to a new resentencing under the framework established in chapter 2014–220, Laws of Florida?

AFFIRMED.

MAKAR, J., CONCURS; WINOKUR, J., CONCURS WITH OPINION; BENTON, J., CONCURS IN CERTIFIED QUESTION BUT DISSENTS ON MERITS WITH OPINION.

WINOKUR, J., concurring.

I concur in the majority opinion. I write separately because I see no compelling reason to overturn five years of constitutional,[2] legally-authorized resentences imposed following Graham v. Florida, 560 U.S. 48 (2010). That would be the result if Kelsey prevailed in this appeal.

While Kelsey's original sentence violated Graham, rather than Miller v. Alabama, 132 S. Ct. 2455 (2012), Miller is the starting point of this analysis. Miller prohibits a mandatory life without parole sentence for an offense committed by a juvenile. Miller presented a significant difficulty in Florida because, as the majority opinion notes, no valid remedy on resentencing was available. The Florida Supreme Court resolved the matter in Horsley v. State, 160 So. 3d 393 (Fla. 2015). Under the "unique" (a term the Court used four times) circumstances presented by offenders whose sentences were unconstitutional but had no legal resentencing alternatives available, the Court ordered the extraordinary remedy of retroactive application of a new sentencing law, despite that law's terms limiting its application to offenses "committed on or after July 1, 2014." Ch. 2014-220, §§ 2, 3, at 2872-73, Laws of Fla. (codified at §§ 921.1401(1); 921.1402(1), Fla. Stat.

---

[2] I am presuming that Kelsey's 45-year sentence is constitutional under Graham. My opinion addresses the issue of whether Kelsey is entitled to a second resentencing pursuant to the 2014 sentencing statute because his *original* sentence violated Graham.

(2014)). In reaching this conclusion, the Court rejected the argument that this remedy violated Article X, section 9 of the Florida Constitution, the so-called "Savings Clause," (generally prohibiting the retroactive application of a sentencing law), because "in this unique context" where the sentencing statute itself is unconstitutional, "the requirements of the federal constitution must trump those of our state constitution." Horsley, 160 So. 3d at 406.

Thomas v. State, 40 Fla. L. Weekly S479f (Fla. Sept. 4, 2015), a case on which the dissent heavily relies, involved an offender whose life sentence violated Miller. The trial court resentenced Thomas to concurrent 40- and 30-year terms of imprisonment, which this Court affirmed prior to the Horsley decision. Thomas v. State, 135 So. 3d 590 (Fla. 1st DCA 2014). In a two-sentence unpublished order, the Supreme Court quashed this Court's decision and ordered resentencing "in conformance with the framework established in chapter 2014–220, Laws of Florida," consistent with its opinion in Horsley. Thomas, 40 Fla. L. Weekly at S479.

In my view the Thomas order only recognizes that the 40-year resentence was impermissible. The sentencing court could not simply choose a sentence without statutory authority in an effort to comply with Miller.[3] Because the

---

[3] The Supreme Court said as much in Horsley, ruling that such sentences "ignore the primary role of the Legislature in criminal sentencing by crafting a remedy without a statutory basis." Horsley, 160 So. 3d at 405.

Supreme Court had already ruled in <u>Horsley</u> that the proper resolution was retroactive application of the 2014 sentencing law, the defendant in <u>Thomas</u> was entitled to that remedy.

Kelsey's resentence, in contrast to Thomas's, was both constitutional *and* statutorily authorized.[4] Retroactive application of the 2014 law to Kelsey would mean that every <u>Graham</u> defendant who has been resentenced since <u>Graham</u> was decided in 2010 gets a second resentencing, even though the first resentence was consistent with <u>Graham</u> and applicable sentencing statutes. Given the "unique circumstances" occasioning the retroactive application of the 2014 law in <u>Horsley</u>, I do not believe that the Supreme Court meant to disrupt the finality of legal sentences imposed years earlier by applying a later-enacted law to them.

I recognize that the Supreme Court in <u>Henry v. State</u>, 40 Fla. L. Weekly S147, S149 (Fla. Mar. 19, 2015), ruled that Henry, a <u>Graham</u> defendant, should be resentenced under the 2014 law, even though the "unique circumstances" present with <u>Miller</u> defendants do not seem to be present with <u>Graham</u> defendants. <u>See also</u> <u>Gridine v. State</u>, 40 Fla. L. Weekly S149 (Fla. Mar. 19, 2015) (holding that <u>Graham</u> prohibits a 70-year sentence for a juvenile nonhomicide offender). In my

---

[4] Sexual battery is a life felony, punishable by a term of imprisonment for life or by imprisonment for a term of years not exceeding life imprisonment. §§ 794.011(3); 775.082(3)(a)3., Fla. Stat. (2002). Armed robbery, and armed burglary with an assault or battery, are first-degree felonies punishable by imprisonment for a term of years not exceeding life imprisonment. §§ 812.13(2)(a); 810.02(2)(a) & (b); 775.082(3)(b), Fla. Stat. (2002).

view <u>Henry</u> does not apply to Kelsey because Henry's 90-year sentence (as well as Gridine's 70-year sentence) violated the Eighth Amendment pursuant to <u>Graham</u>. While Kelsey's original sentence violated <u>Graham</u>, his current sentence does not. <u>C.f.</u> <u>Horsley</u>, 130 So. 3d at 394 n. 1, 397 (noting that the issue presented there was the proper remedy for sentences that are "*now* unconstitutional" under <u>Miller</u> (emphasis added)). As stated above, no compelling reason exists to overturn Kelsey's constitutional, statutorily-authorized resentence. I would limit the <u>Henry</u> remedy to defendants whose current sentences violate <u>Graham</u>, which generally means any sentence that is so long that it does not afford the offender an "opportunity for release based on demonstrated maturity and rehabilitation during his or her natural life." <u>Henry</u>, 40 Fla. L. Weekly at S149. Any other interpretation unnecessarily erodes the finality of sentences that were legally imposed and in compliance with <u>Graham</u>.

In summary, I find that neither <u>Henry</u> nor <u>Thomas</u> supports resentencing here. Henry was permitted resentencing under the 2014 law because his sentence was unconstitutional. Thomas was permitted resentencing under the 2014 law not because his first resentence was unconstitutional, but because it was not statutorily authorized. Because Kelsey's resentence is both constitutional and statutorily authorized, neither case applies and he is not entitled to a second resentencing. Accordingly, I concur in the majority opinion.

9

BENTON, J., dissenting.

I respectfully dissent on the merits of the appeal. Under controlling precedent, the appellant is entitled to be "resentenced in light of the new juvenile sentencing legislation enacted by the Florida Legislature in 2014, ch. 2014-220, Laws of Fla." Henry v. State, 40 Fla. L. Weekly S147, S149 (Fla. Mar. 19, 2015), reh'g denied, No. SC12-578 (Fla. Sept. 24, 2015). I concur in certifying the question posed in the majority opinion.

The appellant was sentenced in 2010 to life in prison without parole for nonhomicide offenses he committed as a juvenile in 2002. These sentences violated the prohibition later handed down in Graham v. Florida, 560 U.S. 48, 82 (2010), against "the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." After the original sentences were vacated, appellant was resentenced in 2014 to concurrent 45-year sentences. The resentencing that took place in the wake of Graham, while not the equivalent of life in prison, did not conform to the new juvenile sentencing legislation.[5]

---

[5] In affirming Kelsey's sentences, the majority opinion cites Abrakata v. State, 168 So. 3d 251 (Fla. 1st DCA 2015), and Lambert v. State, 170 So. 3d 74 (Fla. 1st DCA 2015), both of which are distinguishable: Neither involved a violation of Graham v. Florida, 560 U.S. 48 (2010). In Abrakata, the juvenile defendant was convicted of attempted second-degree murder with a firearm (a first-degree felony), and sentenced to twenty-five years in prison with a twenty-five-year mandatory minimum. 168 So. 3d at 251, 251 n.1. On appeal to this court,

10

The appellant now seeks either resentencing under section 921.1402, Florida Statutes (2014), or judicial abolition of parole ineligibility. He maintains we "should invalidate either the statutory provisions that prohibit parole and require offenders to serve 85 percent of their sentences, or the provision in the new sentence review law for juveniles making review available only for offenses committed on or after July 1, 2014." Under Henry, he is entitled to resentencing under section 921.1402, Florida Statutes, enacted last year, ch. 2014-220, Laws of Fla., § 3, but not to the invalidation of the statutory provisions he seeks in the

Abrakata argued he was entitled "to a review of his sentence after 15 years under section 921.1402(2)(c), Florida Statutes." Id. at 251. This court rejected Abrakata's argument, reasoning, "absent a violation of Graham, there is no legal basis to retroactively apply section 921.1402 (or any other provision of the juvenile sentencing legislation enacted in 2014) to the 2011 offense in this case." Id. at 252. In the present case, Kelsey's initial sentence was plainly a violation of Graham.

In Lambert, which was briefed before Henry v. State, 40 Fla. L. Weekly S147 (Fla. Mar. 19, 2015), was decided, the juvenile defendant argued that his fifteen-year sentence for aggravated fleeing or attempting to elude "should be amended to reflect that he [wa]s entitled to parole eligibility pursuant to the reasoning in Graham and Judge Padovano's concurring opinion in Smith v. State, 93 So. 3d 371 (Fla. 1st DCA 2012)." 170 So. 3d at 75. This court rejected that argument, stating: "We do not read Henry or Gridine[ v. State, 40 Fla. L. Weekly S149 (Fla. Mar. 19, 2015),] to require that all juveniles convicted of nonhomicide crimes must be given an opportunity for early release by parole or its equivalent from their term-of-years sentences." Id. at 76. We concluded, moreover, Lambert's fifteen-year sentence afforded him "a meaningful opportunity for release during his natural life," because it did "not amount to anything close to a de facto life sentence." Id. Whether Henry applies to sentences for offenses committed before July 1, 2014, that are not resentences required under (Miller v. Alabama, 132 S.Ct. 2455 (2012), or) Graham is not before us.

11

alternative.

We did not originally "read Henry or Gridine[ v. State, 40 Fla. L. Weekly S149 (Fla. Mar. 19, 2015),] to require that all juveniles convicted of nonhomicide crimes must be given an opportunity for early release by parole or its equivalent from their term-of-years sentences. Rather, we read those cases to simply hold that juvenile offenders convicted of nonhomicide crimes cannot be sentenced to an individual or aggregate term-of-years sentence that amounts to a de facto life sentence that does not afford the offender a meaningful opportunity for release during his or her natural life." Lambert v. State, 170 So. 3d 74, 76 (Fla. 1st DCA 2015).

But it is now clear that so-called Graham cases are to be treated just like cases revisited under Miller v. Alabama, 132 S.Ct. 2455 (2012), and that an initial resentencing that, even though not a life sentence (or the equivalent) itself, does not conform to the requirements of Henry and section 921.1402 must be set aside and reimposed "in light of the new juvenile sentencing legislation." Henry, 40 Fla. L. Weekly at S149; see Thomas v. State, 40 Fla. L. Weekly S479, S479 (Fla. Sept. 4, 2015) (requiring a second resentencing "in conformance with the framework established in chapter 2014-220, Laws of Florida").

In Horsley v. State, 160 So. 3d 393, 405 (Fla. 2015), the Florida Supreme Court had to fashion appropriate relief for "juvenile offenders whose sentences are

12

unconstitutional under <u>Miller</u>." See <u>Miller</u>, 132 S.Ct. at 2469 (holding "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders"). In the aftermath of <u>Miller</u>, the trial court had resentenced Horsley to life without parole, albeit after individualized consideration. <u>Horsley</u>, 160 So. 3d at 396–97. On direct review of his resentencing, our supreme court concluded that chapter 2014-220, Laws of Florida, (now codified as sections 775.082, 921.1401, and 921.1402 of the Florida Statutes) should be applied to Horsley (and "all juvenile offenders whose sentences are unconstitutional under <u>Miller</u>") even though Horsley's offense was committed prior to the effective date of the new juvenile sentencing legislation. <u>Id.</u> at 405, 408 (saying "the Legislature has now provided that all juvenile offenders must receive individualized consideration before the imposition of a life sentence and that most juvenile offenders are eligible for a subsequent judicial review of their sentences").

On the same day <u>Horsley</u> was decided, our supreme court held that the new juvenile sentencing legislation also applies to nonhomicide offenders whose sentences are unconstitutional under <u>Graham</u>. See <u>Henry</u>, 40 Fla. L. Weekly at S149 (citing <u>Horsley</u>); <u>see also</u> <u>Gridine</u>, 40 Fla. L. Weekly at S151 (remanding "to the sentencing court to conduct proceedings in accordance with <u>Henry</u>" where juvenile nonhomicide offender originally received a seventy-year prison sentence).

13

Henry was a juvenile who had been convicted of multiple nonhomicide offenses for which he was originally sentenced to life plus sixty years' imprisonment. <u>Henry</u>, 40 Fla. L. Weekly at S148. He was resentenced in the wake of <u>Graham</u>, and received an aggregate sentence of ninety years' imprisonment. <u>Id.</u>

The Florida Supreme Court ruled that Henry's ninety-year sentence was unconstitutional under <u>Graham</u>, not because the resentencing was a life sentence equivalent, but because it did not "afford any 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation'" during his natural life. <u>Id.</u> at S149 (quoting <u>Graham</u>, 560 U.S. at 75). The <u>Henry</u> court stated:

> We conclude that <u>Graham</u> prohibits the state trial courts from sentencing juvenile nonhomicide offenders to prison terms that ensure these offenders will be imprisoned without obtaining a meaningful opportunity to obtain <u>future early release</u> during their natural lives based on their demonstrated maturity and rehabilitation.
>
> In light of the United States Supreme Court's long-held and consistent view that juveniles are different—with respect to prison sentences that are lawfully imposable on adults convicted for the same criminal offenses—we conclude that, when tried as an adult, the specific sentence that a juvenile nonhomicide offender receives for committing a given offense is not dispositive as to whether the prohibition against cruel and unusual punishment is implicated. Thus, we believe that the <u>Graham</u> Court had no intention of limiting its new categorical rule to sentences denominated under the exclusive term of "life in prison." Instead, we have determined that <u>Graham</u> applies to ensure that <u>juvenile nonhomicide offenders will not be sentenced to terms of imprisonment without affording them a meaningful</u>

14

> opportunity for early release based on a demonstration of maturity and rehabilitation. See Graham, 560 U.S. at 75.
>
> In light of Graham, and other Supreme Court precedent, we conclude that the Eighth Amendment will not tolerate prison sentences that lack a review mechanism for evaluating this special class of offenders for demonstrable maturity and reform in the future because any term of imprisonment for a juvenile is qualitatively different than a comparable period of incarceration is for an adult. See id. at 70–71 . . . .

Id. (emphasis added). Just as in the present case, Henry's original sentence did not comply with the dictates of Graham. Just as the supreme court ordered Henry to be resentenced under chapter 2014-220, Laws of Florida, id., an intervening resentencing notwithstanding, we should order resentencing in the present case under section 921.1402(2)(d) (as the same provision is now codified). The supreme court's decision in Thomas makes clear that the length of Henry's initial resentencing is not controlling.

As the majority and concurring opinions note, the Florida Supreme Court recently quashed our decision in Thomas v. State, 135 So. 3d 590 (Fla. 1st DCA 2014), and remanded for a second resentencing "in conformance with the framework established in chapter 2014-220, Laws of Florida." Thomas, 40 Fla. L. Weekly at S479. This was despite the fact that Thomas, who was a juvenile convicted of first-degree murder and initially sentenced to mandatory life without parole, had already been resentenced in the wake of Miller to concurrent thirty-

15

and forty-year sentences.  See Thomas, 135 So. 3d at 590.  Our supreme court ruled that Thomas was entitled to be resentenced under the new juvenile sentencing legislation, even though the sentences he received on resentencing were not themselves life sentences or the equivalent.   Kelsey's situation is indistinguishable from Thomas's in this regard.

The majority opinion makes much of the fact the concurrent forty-five-year sentences Kelsey received for nonhomicide offenses on resentencing are not the life sentences that Graham condemned.[6]  Even so, appellant is entitled to a review of his concurrent forty-five-year sentences pursuant to section 921.1402(2)(d), Florida Statues, which provides:

> A juvenile offender sentenced to a term of 20 years or more under s. 775.082(3)(c) [applicable to a juvenile convicted of an offense that is not under the murder statute but is "a life felony or is punishable by a term of imprisonment for life or by a term of years not exceeding

---

[6] The majority opinion contends that Thomas v. State, 40 Fla. L. Weekly S479 (Fla. Sept. 4, 2015), is distinguishable from the present case because Thomas is a Miller case "for which no valid remedy on resentencing was available until the recent legislation."  Ante at 5.  Because "Kelsey's crimes were nonhomicides for which a range of lawful punishments was available," ante at 4, the majority opinion maintains that, in his and other Graham cases, a second resentencing is not required unless the first resentencing results in the imposition of a life or de facto life sentence.  This overlooks the fact that the Florida Supreme Court rejected such a distinction between Miller and Graham cases in Henry, where it ruled the new juvenile sentencing legislation applied to juvenile nonhomicide offenders, even though "a wide range of valid term of years sentences [we]re available for juvenile[s] whose original sentence[s] were unconstitutional under Graham."  Ante at 5.  Under the majority opinion's view, juvenile homicide offenders would be treated more favorably than juvenile nonhomicide offenders.

life imprisonment" (or an offense reclassified as such)] is entitled to a review of his or her sentence after 20 years. If the juvenile offender is not resentenced at the initial review hearing, he or she is eligible for one subsequent review hearing 10 years after the initial review hearing.

See § 775.082(3)(c), Fla. Stat. (2014). In Horsley, our supreme court explained:

[J]uvenile offenders sentenced to a term of imprisonment of more than twenty years for a nonhomicide offense are entitled to a subsequent judicial review of their sentences. Ch. 2014-220, §§ 1, 3, Laws of Fla. [codified at sections 775.082 and 921.1402, Fla. Stat.] This class of nonhomicide offenders is also eligible for "one subsequent review hearing 10 years after the initial review hearing," if the juvenile nonhomicide offender is not resentenced at the initial review hearing. Ch. 2014-220, § 3, Laws of Fla. [codified at section 921.1402, Fla. Stat.] This is the only class of juvenile offenders entitled to more than one subsequent sentence review.

160 So. 3d at 404–05. Under Henry, Kelsey is entitled to a review of his concurrent forty-five-year sentences after twenty years of incarceration (and to a second review hearing in another ten years should he not be resentenced at the initial hearing). See § 921.1402(2)(d), Fla. Stat.

Accordingly, I would reverse Kelsey's sentences and remand for resentencing, "in conformance with the framework established in chapter 2014-220, Laws of Florida," Thomas, 40 Fla. L. Weekly at S479, while joining the majority opinion as to the certified question.

17